NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AREAS USA SJC, LLC, | No. C11-04487 HRL |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS IN THE SECOND AMENDED ANSWER** |
| v. | |
| MISSION SAN JOSE AIRPORT, LLC; ET AL., | |
| Defendants. | [Re: Docket No. 50] |

Areas USA SJC, LLC ("Areas") sued Mission San Jose Airport, LLC and Mission Yogurt, Inc. (collectively "Mission") alleging breach of a concession contract ("the subcontract") for the build-out and operation of concession space known as TA-21 ("the space" or "TA-21") in the Norman Y. Mineta San Jose International Airport ("Airport"). Dkt. No. 1 ("Complaint"). Mission counterclaimed, alleging fraud in the inducement and breach of contract, contending that Areas made material misrepresentations about the viability of building out TA-21 as a food concession and failed to disclose material facts in contravention of an agreement to do so with the City of San Jose.

Areas moved to dismiss Mission's counterclaims and to strike Mission's affirmative defenses. Dkt. No. 22. Mission then filed a First Amended Answer ("FAA") as a matter of course pursuant to Fed. R. Civ. P. 15(a). Dkt. No. 27. Areas moved to dismiss the counterclaims in the FAA and to strike the affirmative defenses, followed by Mission filing a Second Amended Answer ("SAA"). Dkt. Nos. 29, 30, 32. Areas then moved to strike the SAA. Dkt. No. 34. The court granted

Areas's motion to strike the SAA, granted the motion to dismiss Mission's counterclaims with leave to amend, and granted in part and denied in part the motion to dismiss Mission's affirmative defenses with leave to amend. Dkt. No. 47. Mission timely filed a new SAA. Dkt. No. 49. Areas now moves again to dismiss Mission's counterclaims. Dkt. No. 50. Mission has opposed the motion. Dkt. No. 53. All parties have expressly consented to magistrate jurisdiction pursuant to 28 U.S.C. § 636(c). Based on the moving papers, arguments presented at the hearing held on July 31, 2012, and all applicable authority, the court rules as follows.

LEGAL STANDARD

On motion, a court may dismiss a complaint for failure to state a claim. FED. R. CIV. P. 12(b)(6). The federal rules require that a complaint include a "short and plain statement" showing the plaintiff is entitled to relief. FED. R. CIV. P. 8(a)(2). The statement must "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 55 (2007). However, only plausible claims for relief will survive a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). A claim is plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 1950.

In deciding a motion to dismiss, the court is ordinarily limited to the face of the complaint. Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). The factual allegations pled in the complaint must be taken as true and reasonable inferences drawn from them must be construed in favor of the nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996); Mier v. Owens, 57 F.3d 747, 750 (9th Cir. 1995) (citing Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987)). However, the court cannot assume that "the [plaintiff] can prove facts which [he or she] has not alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.

2001) (citing Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994)), amended on other grounds by 275 F.3d 1187 (9th Cir. 2001).

"A court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). "'Four factors are commonly used to determine the propriety of a motion for leave to amend. These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment.'" Ditto v. McCurdy, 510 F.3d 1070, 1079 (9th Cir. 2007) (internal citations omitted). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995). An amendment would be "futile" if there is no set of facts can be proved which would constitute a valid claim or defense. See Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988). A complaint may be dismissed with prejudice when plaintiff has "multiple opportunities to amend and [is] unable to cure the defects that required dismissal of [] previous complaints." Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1060 (9th Cir. 2008).

DISCUSSION

Areas moves to dismiss Mission's counterclaims for fraud in the inducement and breach of contract, alleging that the counterclaims fail to state claims upon which relief can be granted. Dkt. No. 50. Mission opposes the motion, arguing that it has provided ample factual support for its claims sufficient to survive a motion to dismiss.

A. Fraud in the Inducement

Fed. R. Civ. P. 9(b) requires that in all claims for fraud, the circumstances constituting fraud must be stated with particularity. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003). The elements of fraud are (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage. Lazar v. Super. Ct., 12 Cal. 4th 631, 638, 49 Cal. Rptr. 2d 377, 909 P.2d 981 (1996). "Fraud in the inducement is a subset of fraud. It 'occurs when the promisor knows what he is signing but his consent is induced by fraud.'" Parino v. Bidrack, Inc.,

2011 U.S. Dist. LEXIS 109543, *10 (N.D. Cal. Sept. 26, 2011) (quoting Rosenthal v. Great W. Fin. Sec. Corp., 14 Cal. 4th 394, 415, 58 Cal. Rptr. 2d 875, 926 P.2d 1061 (1996).

In support of its claim for fraud in the inducement, Mission alleges that Guillermo Hidalgo, superintendent for the contractor managing the SJC Airport Terminal Area Improvement Program ("Airport Program"), expressly informed Areas executive Kevin Reynolds and executives of Legends Group, Inc. ("Legends"), the design firm Areas used for its concession spaces within the airport, that no plumbing lines could be placed above the special security equipment[1] below TA-21, and that "all plan documents [should] make reference" to those limitations. SAA ¶ 14-15. In addition, Mission alleges that Bert Beattie, the City of San Jose's Project Manager for the Airport Program, told Legends design director Gayle Dixon that whatever entity ultimately agreed to build out TA-21 "need[ed] to be informed of" the special construction issues caused by the security equipment below TA-21 "in the design proposal." SAA ¶ 18. Mission further alleges that Areas employees, Legends employees, and city employees discussed the construction issues and their associated costs at length, and Areas ultimately agreed to inform any potential subconcessionaire of the relevant construction limitations.[2] SAA ¶¶ 18-24.

Mission contends that its president, Rod Tafoya, conducted several visits to the airport to consider the viability of building out the TA-21 space, but that every visit required special security access and an Areas employee escort. SAA ¶ 30. Mission alleges that it was never given any access to the area below TA-21, that that area was not publically accessible, and that Areas never gave Mission any indication of what was below the TA-21 space. SAA ¶ 31. Mission alleges that at least once, Tafoya specifically asked Pham, the Areas employee, "whether there were any abnormal or unusual construction issues that he should know about with respect to the TA-21 space" and that Pham told him there were not. SAA ¶ 32. According to the SAA, this statement by Pham was made months after Areas, Legends, and City employees discussed the construction limitations at the TA-

---

[1] Mission notes that while "it is common to have to work around baggage conveyor systems while building out airport concessions, having to work around CTX Machines [the machines located below TA-21] is unusual and not an expected part of build-out," SAA ¶ 31.

[2] Mission contends that Areas did inform the entity with which it first attempted to negotiate a subconcession contract for the build-out of TA-21, and that that entity pulled out of negotiations shortly after receiving the information about construction limitations and the associated costs. SAA ¶ 25. It also alleges that a second potential subconcessionaire backed out of negotiations, presumably after learning of these issues. SAA ¶ 26.

1    21 space. SAA ¶ 32; cf. SAA ¶ 18-22. Mission also alleges on information and belief that Areas
2    executives expressly informed Pham and Legends employees not to disclose the construction
3    restrictions to Mission, despite their earlier agreement with the City to make such disclosures, in an
4    attempt to secure a subconcessionaire for the TA-21 space. SAA ¶ 32. Finally, Mission alleges that
5    it had contracted with Areas for the build-out of another concession space in the airport, which had
6    no special construction limitations, and that Mission specifically relied on Areas's repeated
7    assurances that the TA-21 space would require similar build-out costs and had no special restrictions
8    as compared to that earlier contract. SAA ¶ 35, 37.

9    Areas argues that these allegations fail to meet the particularity standard required by Fed. R.
10   Civ. P. 9(b). Specifically, it argues that Mission has failed to allege sufficiently specific facts as to
11   the reasonableness of its reliance on assurances Areas made about the lack of special construction
12   issues. Dkt. No. 50, p. 5. Areas also argues that, to the extent that misrepresentations may have been
13   made, they are "foreclosed" by the contract, which expressly disclaims that any warranties were
14   made with respect to the condition of the premises. Id. at pp. 6-7.

15       1. *Whether Mission Has Adequately Pled Elements of Fraud*

16   Areas's contention that Mission must plead with particularity facts supporting the
17   reasonableness of its reliance on Areas's alleged misrepresentations is unavailing. Although fraud
18   must be pled "with particularity," the goal of Fed. R. Civ. P. 9(b) is simply to give the opposing
19   party adequate notice of the claim so that it may prepare a response. See Cooper v. Pickett, 137 F.3d
20   616, 627 (9th Cir. 1998) (finding that a claim for fraud need only "'identif[y] the circumstances of
21   the alleged fraud so that defendants can prepare an adequate answer.'" (quoting Warshaw v. Xoma
22   Corp., 74 F.3d 955, 960 (9th Cir. 1996)) (overruled as to pleading requirements under the Private
23   Securities Litigation Reform Act); In re Technical Equities Fed. Sec. Litig., 1989 U.S. Dist. LEXIS
24   18405, *7-8 (N.D. Cal. Aug. 22, 1989) (stating that the "central concern" of Rule 9(b) "is to ensure
25   that the Complaint alleges 'the circumstances constituting fraud so that the defendant can prepare an
26   adequate answer from the allegations' (quoting Lewis v. Sporck, 612 F. Supp. 1316, 1324-25 (N.D.
27   Cal. 1985)). Areas's argument that Mission must state with particularity the grounds for its belief
28

1  that its reliance on representations made before the subcontract was executed was reasonable would
2  impose a pleading standard not recognized in this Circuit.

3        This court concludes that the SAA does adequately lay out the "who, what, when and where"
4  of the alleged fraud so as to allow Areas to prepare a response. Mission has alleged that specific
5  City employees informed specific Areas employees, as well as specific Legends employees working
6  for Areas on the Airport Program, of the special construction restrictions in the TA-21 space (who).
7  Mission gives exact dates for these communications (when). Mission alleges that the City
8  employees expressly directed Areas to inform any potential subconcessionaire of the restrictions
9  "early on," a direction that Legends employees repeated to Areas executives. Finally, Mission
10 alleges that its president, Rod Tafoya, asked Huy Pham, an Areas employee who was expressly
11 directed to inform subconcessionaires of these restrictions, at a site visit on June 2, 2010 whether
12 there were any special construction issues and that Pham told Tafoya that there were not (what,
13 when, and where). As for the reasonableness element with which Areas is so concerned, Mission
14 also alleged that it had already executed a separate subcontract with Areas for a different concession
15 space, and that Areas represented that TA-21 would involve substantially similar costs as the first
16 space. This does speak to the reasonableness of Mission's belief that Areas was providing accurate
17 representations upon which Mission could reasonably rely. Accordingly, Areas's argument that
18 Mission failed to adequately plead the elements of fraud fails, and does not provide a basis for
19 dismissing the claim.

20     2. *Whether Mission's Claim is Foreclosed by the Subcontract*

21     Next, Areas argues that Mission cannot now claim fraud because the subcontract expressly
22 provides that Areas made no warranties as to "the quality of construction of any improvements
23 within the premises or as to the condition of the premises, either express or implied, and that the
24 concessionaire and city expressly disclaim any implied warranty that the premises are or will be
25 suitable for subconcessionaire's intended purposes." See Complaint, Exh. B ¶ 22. Areas contends
26 that when a contract makes an express provision covering a topic, such as the absence of warranties
27 regarding the condition of the premises in this case, the parties are foreclosed from asserting that
28 fraudulent representations were made about that topic. Dkt. No. 50, pp. 7-9. See Okura & Co. v.

Careau Group, 783 F. Supp. 482, 500 (C.D. Cal. 1991) (finding that defendant could not prevail on a fraudulent misrepresentation claim using parol evidence of oral promises by plaintiff not to call in loan payments owed when the subject contract clearly set forth the loan payment schedule).

However, in this case, Mission contends that the subcontract term Areas points to does *not* address its allegations, because the subcontract only speaks of the "premises," which does not include the security zone filled with special equipment beneath TA-21. Dkt. No. 53, p. 10. The subcontract defines the "premises" as "Location TA-21 in Terminal A at the Norman Y. Mineta San Jose International Airport." Complaint, Exh. B, Exh. B thereto. The court agrees that a plain reading of this definition includes only the TA-21 space itself, not the area beneath. Thus, it is not at all obvious that the subcontract disclaims any warranties that may have been made about construction restrictions resulting from the location of the CTX machines, and the contract term may not actually address the allegedly fraudulent representations Missions alleges Areas made. The holdings in Okura and California Bagel. Co. v. American Bagel Co., both cited by Areas, do not extend to a case like this one, where it is unclear whether the contract disclaimer covers the topic at issue. See Cal. Bagel Co., LLC v. Am. Bagel Co., 2000 U.S. Dist. LEXIS 22898, *3-4 (C.D. Cal. June 2, 2000) (holding that a party may not base a claim for fraudulent misrepresentation on statements of expected profitability when the opposing party provided written notice *before* the contract was executed that no warranties would be made about profitability).

Indeed, Mission argues persuasively that Areas may not be permitted to avoid liability for fraud simply by pointing to a contract disclaimer if, as Mission asserts, it failed to disclose *any* information about the space below "the premises" even though it knew that the space below TA-21 presented significant construction restrictions that would materially affect the agreement between the parties. See Dkt. No. 53, p. 11. California law holds that no contract may exempt a party from liability for its own fraud, and that parol evidence may be admitted on a fraud in the inducement claim to contradict a contract stipulation that attempts such an exemption. Cal. Civ. Code § 1668; Manderville v. PCG&S Group, Inc., 146 Cal. App. 4th 1486, 1499-1501 (Cal. App. 4th Dist. 2007) (citing 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 304, pp. 330–331 ("[A] party to a contract . . . guilty of fraud in its inducement cannot absolve himself . . . by any stipulation in the

contract, either that no representations have been made, or that any right that might be grounded upon them is waived. Such a stipulation or waiver will be ignored, and parol evidence of misrepresentations will be admitted, for the reason that fraud renders the whole agreement voidable, including the waiver provision.")). Areas's argument that the contract term "forecloses" Mission's assertion must therefore fail.

Accordingly, the court is unable to conclude at this stage that Mission's fraud claim is foreclosed by the contract term regarding warranties made about the "premises" because (1) it is not clear that the contract term addresses Mission's specific allegations; and (2) it is contrary to California law to find as a matter of law that no fraud has occurred based solely on a contract provision that might itself be the product of a fraud.

Areas also argues that to the extent Mission alleges misrepresentations that are actually statements of opinion rather than fact, such statements are not actionable under a claim for fraud. Dkt. No. 50, p. 8. Areas appears to be focusing on Mission's allegations that Huy Pham told Rod Tafoya that the cost of building out TA-21 would be substantially similar to the cost of building out the other concession space Areas had leased to Mission. See SAA ¶¶ 35-36. General statements of valuation "are not misrepresentations, amounting to deceit, nor are they to be regarded as statements of existing facts, upon which an action for deceit may be based, but rather as the expressions of opinions or beliefs." Lehigh Zinc & Iron Co. v. Bamford, 150 U.S. 665, 673 (U.S. 1893). Areas is correct in its assertion, and the court agrees that Mission cannot base its fraud claim on Pham's alleged statements about the expect build-out costs, even if those costs were substantially higher than the minimum capital improvement expenditure set forth in the subcontract. However, Mission also alleges that "[d]espite his experience with [the previous potential subconcessionaire], and Legends' repeated warnings, Pham told Tafoya that there were no unusual construction issues with the space." SAA ¶ 33. This is not a statement of opinion, but one of material fact, and therefore a valid basis for a claim of fraud.

In conclusion, Areas's arguments in support of dismissing Mission's claim for fraud in the inducement are unpersuasive. The claim is sufficiently pled. The motion to dismiss is DENIED.

B. Breach of Contract

Areas next argues that Mission's counterclaim for breach of contract fails to state a claim upon which relief can be granted. Dkt. No. 29, pp. 11-12. "A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." Careau & Co. v. Sec. Pacific Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1388 (1990).

Mission alleges that the subcontract between Areas and Mission obligated Areas to tell Mission if it had any other agreements with the City (excluding, of course, the Prime Contract, which was appended to the subcontract). In the subcontract, Areas expressly represented that it "ha[d] no other agreements with the City, other than the Prime Contract." See Complaint, Exh. A ("Subconcession Contract"). Mission alleges that there *was* a separate agreement resulting from talks between City and Areas employees, in which the City instructed Areas to tell subconcessionaires about the CTX machines below the space. SAA ¶ 24. Mission does not allege that a written agreement was executed.[3] Mission contends that Areas's misrepresentation about other agreements it had with the City constituted a material breach of the subcontract that occurred at the moment of execution, excusing Mission from any performance under the subcontract. SAA ¶ 57.[4]

Mission's vague allegations do not state a claim for breach of contract. There is no written contract and no plausible allegation that the speakers intended to enter into a contract for the benefit of Mission. There are no allegations of offer, acceptance, or consideration. The conversations alleged do not create a contract. Rather, they further support Mission's fraudulent inducement claim.

As stated above, where a party has had multiple opportunities to amend and cannot state a viable claim for relief, dismissal without leave to amend is appropriate. Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1060 (9th Cir. 2008) (finding dismissal without leave to

---

[3] In fact, at the July 31, 2012 hearing, counsel for Mission admitted that he did not believe any written contract resulted from the series of communications between Areas and City employees.
[4] In its moving papers, Areas just misses the boat by arguing, incorrectly, that Mission claims that Areas breached a term in its original proposal to the City, which was incorporated into the Prime Contract. Areas also argues that the Prime Contract contains provisions that obligate Areas and Mission to comply with specific guidelines, rules, regulations, and the like that may be imposed by the City, but has not asserted that any specific guidelines addressing the CTX machines fall within the ambit of the Prime Contract's provisions.

9

amend appropriate when a party has "multiple opportunities to amend and [is] unable to cure the defects that required dismissal of [] previous complaints."). See also Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988) ("An amendment would be 'futile' if there is no set of facts can be proved which would constitute a valid claim or defense."). Mission has now had four opportunities to state a viable claim for breach of contract, without success. The court therefore concludes that further amendments would be futile, and dismissal without leave to amend is appropriate. Areas's motion is GRANTED as to Mission's breach of contract claim, without leave to amend.

CONCLUSION

Based on the foregoing, IT IS ORDERED THAT Areas's motion to dismiss is GRANTED IN PART AND DENIED IN PART. Mission's fraud in the inducement claim is sufficiently pled. Mission's breach of contact claim fails to state a claim for relief and is now DISMISSED without leave to amend.

Dated: August 1, 2012

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C11-04487 HRL Notice will be electronically mailed to:**

| | |
|---|---|
| Karin Bohmholdt | bohmholdtk@gtlaw.com |
| Scott Bertzyk | bertzyks@gtlaw.com |
| Denise Mayo | mayod@gtlaw.com |
| Daniel Rockey | daniel.rockey@hro.com |
| Meryl Macklin | meryl.macklin@bryancave.com |

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**