1  GREENBERG TRAURIG, LLP
   SCOTT D. BERTZYK (SBN 116449)
2  DENISE M. MAYO (SBN 275561)
   1840 Century Park East, Suite 1900
3  Los Angeles, California  90067
   Tel: (310) 586-7700; Fax: (310) 586-7800
4  E-mail: *BertzykS@gtlaw.com*

5  GREENBERG TRAURIG, P.A.
   GERARDO RODRIGUEZ-ALBIZU (Admitted *Pro Hac Vice*)
6  777 South Flagler Drive, Suite 300 East
   West Palm Beach, Florida 33401
7  Telephone: (561) 650-7900
   Facsimile:  (561) 655-6222
8
   Attorneys for Plaintiff,
9  AREAS USA SJC, LLC

10

11                      **UNITED STATES DISTRICT COURT**

12                    **NORTHERN DISTRICT OF CALIFORNIA**

13

14  AREAS USA SJC, LLC, a California limited     **CASE NO.  C11-04487 HRL**
    liability company,
15                                               **PLAINTIFF AREAS USA SJC, LLC'S**
                                                 **SUPPLEMENTAL PROPOSED JURY**
16              Plaintiff,                       **INSTRUCTIONS**

17  vs.

18  MISSION SAN JOSE AIRPORT, LLC, a            Judge:   Hon. Howard Lloyd
    Colorado limited liability corporation; and
19  MISSION YOGURT, INC., a Colorado
    corporation,
20
                Defendants.                      Complaint filed:  September 9, 2011
21                                               Trial Date:         January 7, 2013

22  and related Counterclaim.

23

24

25

26

27

28

─────────────────────────────────────────────────────
           **PLAINTIFF'S SUPPLEMENTAL PROPOSED JURY INSTRUCTIONS**
WPB 382,947,146v1 12-31-12

1   Pursuant to the Court's comments and rulings at the parties' December 18, 2012, Pretrial

2   Conference, Plaintiff Areas USA SJC, LLC ("Areas") hereby submits Supplemental Proposed Jury

3   Instructions, as **Exhibit 1** hereto.  Also included is a proposed instruction to the jury to advise it of

4   stipulated facts contained in parties' Joint Pretrial Statement.  Defendants Mission San Jose Airport,

5   LLC and Mission Yogurt, Inc. ("Mission") have accepted Areas' supplemental proposed instruction

6   regarding Disadvantaged Business Enterprises; Areas awaits Mission's comments on the other

7   proposed instructions.  The parties will continue to discuss these additional instructions and attempt

8   to reach agreement, but Areas submits them now in order to provide the Court with an opportunity to

9   review them before the January 3 Pretrial Conference.

10   Further, given Mission's abandonment of a claim of lost profits, the out-of-pocket damages

11   instruction proposed by Areas to cover that possibility no longer is relevant, and is therefore

12   withdrawn.

13   Finally, attached hereto as **Exhibit 2** is a revised objection to one of Mission's proposed

14   instructions, with interlineations to the original objections to show differences.

15   Dated: December 31, 2012                GREENBERG TRAURIG, LLP

16

17                                     By:   /s/ Scott D. Bertzyk
                                            Scott D. Bertzyk
18                                          Attorneys for Plaintiff,
                                            AREAS USA SJC, LLC

19

20

21

22

23

24

25

26

27

28

1

**PLAINTIFF'S SUPPLEMENTAL PROPOSED JURY INSTRUCTIONS**

WPB 382,947,146v1 12-31-12

# EXHIBIT 1

Facts Recited in a Written Instrument

The facts recited in the written agreements between Areas and Mission are conclusively presumed to be true as between the parties. That is, you must consider any facts contained in the parties' written agreements as absolutely true facts so far as the parties to this case are concerned.

Source:   California Evidence Code section 622; *California Bagel Co., 18 LLC v. American Bagel Company*, 2000 WL 35798199 *9 (C.D. Cal. 2000) ("These latter statements [regarding profitability of proposed venture] directly contradict plaintiffs' acknowledgment in the Franchise Agreement that they received no 'warranty or guarantee, express or limplied,' regarding the 'potential sales, income, profits or success of the business venture contemplated by th[e] Agreement.'   Under California Evidence Code §§ 622 and 623, therefore, plaintiffs are estopped from pursuing claims based on them.").

Parol Evidence Rule

Mission cannot void its contract with Areas through a claim that Areas made a fraudulent promise that is at variance with the terms of its written agreement.

Source:  *Brinderson-Newberg v. Pacific Erectors,* 971 F. 2d 272, 281 (9th Cir. 1992) ("For parol evidence of fraud or misrepresentation to be admissible under California law, 'it must tend to establish some independent fact or representation, some fraud in the procurement of the instrument or some breach of confidence concerning its use, and not a promise directly at variance with the promise of the writing'")

Caveat Emptor

When real property, other than a new construction, is sold in an "as is" condition, the seller of the property is relieved from any liability for defects in the condition of the property.  The "as is" provision in the sale of property puts the buyer on notice that the seller makes no promises about the quality or condition of the property.

Here, because the property at issue was leased by Areas to Mission in an "as is" condition, Areas is not liable for any defects in the condition of the property, as a matter of law, unless you find that Areas intentionally concealed material defects in the property that could not have been discovered by Mission.

Source: *Shapiro v. Hu*, 188 Cal. App. 3d 324 (Cal. Ct. App. 1986); *Lingsch v. Savage*, 213 Cal. App. 2d 729 (Cal. Ct. App. 1963)

Justifiable Reliance

Justifiable reliance cannot be established where the conduct of the complaining party was manifestly unreasonable in light of his intelligence and information, including contract terms contradicting the matters relied upon, or the ready availability of information.

Source:  *Kahn v. Lischner*, 128 Cal. App. 2d 480, 488 (1954); *California Bagel Co., 18 LLC v. American Bagel Company*, 2000 WL 35798199 *13-14 (C.D. Cal. 2000) (granting summary judgment on this element as a matter of law where alleged representations were contradicted by written terms of disclosure statement).

Stipulated Facts

Areas and Mission have stipulated to certain facts for purposes of this trial which you must accept as true. Those facts are as follows:

1.       In January of 2009, Areas and the City of San Jose entered into a contract, commonly called "Prime Contract," that gave Areas the right to operate concessions in certain designated spaces in Terminals A and B of the San Jose International Airport and/or to enter into subconcession agreements with other concessionaries. One of those spaces was a space in Terminal A denominated as space TA-21. The Prime Contract is Exhibit 157.

2.       Sometime after entering into the Prime Contract with Areas, the Airport installed a baggage handling system, which included expensive CTX machines, on the first floor of Terminal A. The baggage handling system (including CTX machines) was under the space that had been denominated as TA-21.

3.       The precise physical location of the space denominated by the Airport as TA-21 changed effective February 18, 2010. Exhibit 122 shows the original physical location of the TA-21 space. The final configuration of the TA-21 space is reflected in various drawings e-mailed by the Airport to Areas on March 5, 2010. That complete e-mail chain, with drawings, has been produced by Mission as Trial Ex. 29, by one of Mission's architects  as Trial Ex. 7, and by Areas as Trial Ex. 158. Exhibits 4-6 also reflect the final location of the TA-21 space.

4.       Through its President, Rod Tafoya, Mission Yogurt, which was then based only in Denver, Colorado, had expressed an interest in expanding its concession operations into California. In the Spring of 2010, Areas' Huy Pham advised Tafoya that two concession spaces in the Airport were available:  (i) a space in Terminal B called San Jose Joe's; and (ii) the TA-21 space. The San Jose Joe's space already had been fully designed and was in the process of being built out, but the subconcessionaire (D-Lew Enterprises, LLC) then responsible for the space had expressed a desire to divest itself of the concession. The TA-21 space had not been designed or built-out, and was vacant.

5.       Mission representatives traveled to San Jose in April 2010 to inspect the two available spaces. Ultimately, Mission agreed to assume D-Lew Enterprises' obligations as to the San Jose Joe's location in Terminal B, and to sublease the vacant TA-21 space. The following contract documents reflect the assignment to Mission of the San Jose Joe's space in Terminal B:

(a)       Exhibit 30 -- Assignment Agreement between Mission and D-Lew Enterprises for the San Jose Joe's space)

(b)       Exhibit 31 -- Assignment of Concession Subcontract between Mission and D-Lew Enterprises for the San Jose Joe's space,

(c)     Exhibit 171 -- Concession Subcontract between Mission and D-Lew assigned to Mission San Jose Airport,

(d)     Exhibit 32 -- Assignment of License Agreement between Mission and D-Lew Enterprises for the San Jose Joe's space.

In connection with the TA-21 space, Areas and Mission San Jose Airport entered into a contract called the "Concession Subcontract." The Concession Subcontract is Trial Exhibit 35. In essence, the Concession Subcontract provided that Mission San Jose Airport would lease and operate concessions in the space. Mission Yogurt in turn executed a written Guaranty of the Concession Subcontract; that Guaranty is Trial Exhibit 36.

6.     The Concession Subcontract and Guaranty became fully executed in early August, 2010.

7.     Mission has not built out the TA-21 space.

8.     Mission San Jose Airport has not made any of the payments, or posted a letter of credit, as specified in the Subcontract. Mission Yogurt has not made any payments under its Guaranty. The Mission defendants assert defense to performance and the validity of the Concession Subcontract and Guaranty.

Source:  Parties' Joint Pretrial Statement and Report, Docket No. 136

Disadvantage Business Enterprises

Disadvantaged business enterprises are for-profit small business concerns where socially and economically disadvantaged individuals own at least a 51% interest and also control management and daily business operations.    African Americans, Hispanics, Native Americans, Asian-Pacific and Subcontinent Asian Americans, and women are presumed to be socially and economically disadvantaged.

The presumption exists to further policy goals of providing opportunities to such businesses.    This does not mean that owners actually are "disadvantaged" as we ordinarily would understand that term, or that they are held to lesser standards when it comes to contracts they enter into or any claims and defenses they might assert.  In the eyes of the law, the plaintiff and defendants in this case are to be held to and judged by the same standards.

Source:  http://osdbu.dot.gov/DBEProgram/definitions.cfm; *United States ex rel. Laymon v. Bombardier Transp. United States*, 2009 U.S. Dist. LEXIS 70420 (W.D. Pa. Aug. 11, 2009) (requirements for DBE)

# EXHIBIT 2

1    DEFENDANTS' PROPOSED INSTRUCTION NO. ___

2    Affirmative Defense--Fraud

3

4    Mission claims that no contract was created because its consent was obtained by fraud. To

5    succeed, Mission must prove all of the following:

6        1.      That Areas concealed from Mission certain facts about space TA-21, or

7    misrepresented the true facts about space TA-21;

8        2.      That Areas knew the true facts or that it made the representations without reasonable

9    grounds for believing them to be true;

10       3.      That Areas concealed the information or misrepresented the true facts to persuade

11   Mission to agree to the contract;

12       4.      That Mission reasonably relied on Areas' misstatements or that the information

13   concealed by Areas was material; and

14       5.      That Mission would not have entered into the contract if it had known that the

15   representation was not true or had known the true facts.

16       If you decide that Mission has proved all of the above, then no contract was created.

17

18

19   Source:  CACI 335 (modified)

20   **Areas' Proposed Instruction:**

21       Mission claims that no contract was created because its consent was obtained by fraud. To

22   succeed, Mission must prove each of the following separate elements:

23       1.      That Areas concealed from, and/or misrepresented to, Mission material facts

24   concerning the leased premises;

25       2.      That Areas knew the true facts ~~or that it made the representations without reasonable~~

26   ~~grounds for believing them to be true~~ concealed and/or misrepresented;

27       3.      That Areas concealed the information or misrepresented the true facts with the intent

28   of inducing Mission to agree to the contract;

1

82647.1
*WPB 382,930,092v2 12-31-12*

4.    That Mission reasonably and justifiably relied on Areas' alleged misstatements and/or acted to its detriment based on Areas' alleged concealment; and

5.    That Mission was damaged thereby.

If Mission failed to prove even one of these elements, then the defense fails and there is a valid contract.

**Areas' Objections to Mission's Proposed Instruction:**  Areas' proposed edits are modest. Its primary objection is that Mission uses the moniker "space TA-21," which is ambiguous and designed to feed into e-mails dealing with a different space using the same numerical designation.  It also is argumentative in that it omits the requirement of materiality.  Finally, it omits the requirement of damage, which is an element of the claim and would be necessary to make anything material. Finally, fraud in the inducement, even if proven, merely renders a contract voidable at the claimant's election.  It does not render it void.  Areas' proposed instruction cures these problems.  Finally, this Instruction is redundant of the following instructions, so giving it here and there both could place undue emphasis on Mission's claims.

The language stricken from paragraph 2 of Areas proposed instruction was inadvertently carried over from Mission's proposed instruction, which does not faithfully follow CACI 335.  A copy of CACI 335 is attached hereto.

DEFENDANTS' PROPOSED JURY INSTRUCTIONS
AREAS USA SJC, LLC v. MISSION SAN JOSE AIRPORT, LLC, et al.
Case No. CV-11-04487 HRL

82647.1
WPB 382,930,092v2 12-31-12

## 335. Affirmative Defense—Fraud

[*Name of defendant*] **claims that no contract was created because [his/her/its] consent was obtained by fraud. To succeed,** [*name of defendant*] **must prove all of the following:**

1. **That** [*name of plaintiff*] **represented that** [*insert alleged fraudulent statement*]**;**

2. **That** [*name of plaintiff*] **knew that the representation was not true;**

3. **That** [*name of plaintiff*] **made the representation to persuade** [*name of defendant*] **to agree to the contract;**

4. **That** [*name of defendant*] **reasonably relied on this representation; and**

5. **That** [*name of defendant*] **would not have entered into the contract if [he/she/it] had known that the representation was not true.**

**If you decide that** [*name of defendant*] **has proved all of the above, then no contract was created.**

---

*New September 2003*

### Directions for Use

This instruction covers intentional misrepresentation under the first alternative presented in Civil Code section 1572. The other types of fraud that are set forth in section 1572 are negligent misrepresentation, concealment of a material fact, and false promise.

If the case involves an alleged negligent misrepresentation, substitute the following for element 2: "That [*name of plaintiff*] had no reasonable grounds for believing the representation was true."

If the case involves concealment, the following may be substituted for element 1: "That [*name of plaintiff*] intentionally concealed an important fact from [*name of defendant*], creating a false representation." See CACI No. 1901, *Concealment,* for alternative ways of proving this element.

If the case involves a false promise, substitute the following for element 1: "That [*name of plaintiff*] made a promise that [he/she/it] did not intend to perform" and insert the word "promise" in place of the word "representation" throughout the remainder of the instruction.

### Sources and Authority

• The Civil Code provides that consent is not free when obtained through duress,

149                                                                      (Pub. 1283)

This version provided by LexisNexis® Matthew Bender®, Official Publisher, 800-533-1637, www.lexisnexis.com/bookstore, for public and internal court use.

# PROOF OF SERVICE
## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is 1840 Century Park East, Suite 1900, Los Angeles, CA  90067.

On December 31, 2012, I served **PLAINTIFF AREAS USA SJC, LLC'S SUPPLEMENTAL PROPOSED JURY INSTRUCTIONS** on the interested parties in this action by placing the true copy thereof, enclosed in a sealed envelope, postage prepaid, addressed as follows:

Daniel Rockey                                        Attorney for Defendant
Meryl Macklin
BRYAN CAVE LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105
Tel: (415) 286-1986
Fax: (415) 268-1999
*daniel.rockey@bryancave.com*

☒ **(BY ELECTRONIC MAIL)** I certify that the document(s) referenced above were served electronically on the parties listed at the email addresses above and to the best of my knowledge, the  transmission was complete and without error in that I did not receive an electronic notification to the contrary on December 31, 2012.

☒ **(FEDERAL)**        I declare under penalty of perjury that the foregoing is true and correct, and that I am employed at the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 31, 2012 at Los Angeles, California.

//s//:Scott D. Bertzyk
SCOTT D. BERTZYK

1
PROOF OF SERVICE

WPB 382,884,882 v1 133397.010300